779 F.2d 52
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PROGRESSIVE CASUALTY INSURANCE COMPANY, Plaintiff-Appellant,
v.
MARKETFINDERS, INC., Defendant-Appellee.
 83-1636, 83-1682
 United States Court of Appeals, Sixth Circuit.
 10/21/85
 
 REVERSED AND REMANDED
 E.D.Mich., 577 F.Supp. 301
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: LIVELY, Chief Judge; CONTIE and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 The only question in the appeal of this diversity case is whether the district court properly limited the plaintiff's measure of damages. Progressive Casualty Insurance Company (Progressive) sought a declaratory judgment concerning its rights and liabilities with respect to a liquor liability policy issued to Sophie Bieke. The complaint also sought full indemnity for Progressive from Marketfinders for any amount Progressive might be required to pay or expend because of litigation under the Bieke policy. Marketfinders brought in its subproducer Greater Detroit Agency as a third party defendant.
 
 
 2
 Bieke was sued under the Michigan dram shop law for personal injuries suffered during the second policy year and demanded that Progressive defend the action. Progressive claimed the Bieke policy had been cancelled, but undertook defense of the action under a reservation of rights when Bieke denied having executed the 'Lost Policy Cancellation Release' upon which Progressive was relying. Progressive eventually settled the personal injury case against Bieke for $50,000 and expended $5,492 in costs and attorney fees. These expenditures then became the ad damnum in the case against Marketfinders.
 
 
 3
 When the Bieke policy was written Marketfinders was the managing general agent for Progressive in Michigan. Marketfinders' subproducer Greater Detroit Agency requested the coverage for Bieke. A three year policy was issued by Progressive, effective December 29, 1975, and the first year's premium was paid in advance. Two additional annual premiums were to be paid on the policy anniversary date in 1976 and 1977. On December 3, 1976 Progressive notified Marketfinders by letter that it was terminating their contractual relationship. Greater Detroit Agency was not notified of this change. The letter instructed Marketfinders on how the various classifications of policies were to be handled. With respect to continuing three-year policies, it provided:
 
 
 4
 Either the premium or cancellation evidence in the form of a cancellation notice, returned policy, or lost policy release signed by the insured should be submitted to Progressive fifteen days prior to the anniversary date of the policy. If no premium or cancellation evidence is received by Progressive, cancellation will be initiated by the Home Office.
 
 
 5
 At trial no one disputed that the lost policy cancellation release which bore Bieke's name was a forgery, but no party was able to show conclusively who was responsible for it. Progressive produced an internal document which purported to show that the Bieke policy was cancelled on December 28, 1977. While Progressive claimed it cancelled pursuant to the forged cancellation release, its copy of the release was not date-stamped and Marketfinders argued that Progressive never proved it had the release prior to the time of the suit against Bieke. Marketfinders took the position that it neither forwarded the second year premium nor submitted a lost policy release and thus had no duty with respect to cancellation of the policy. The letter of termination, according to Marketfinders, gave it the option of doing nothing about the Bieke policy and relying on the sentence of its instructions which stated, 'If no premium or cancellation evidence is received by Progressive, cancellation will be initiated by the Home Office.' Progressive argued that Marketfinders misled it by submitting a forged cancellation release and created a situation where the insured could require it to defend and pay, though it had cancelled the policy in good faith. There was no evidence that either Bieke or Greater Detroit received notice that the policy was cancelled. There was also no evidence that the second year's premium on the Bieke policy was ever paid.
 
 
 6
 The district court submitted the case to the jury on Progressive's claims of breach of its agent's duty to act in good faith and of fraud and failure to follow its instructions on cancellation of the Bieke policy for non-payment of premium. It also stated Marketfinders' defense and submitted Marketfinders' third-party claim against Greater Detroit Agency for indemnification and Greater Detroit Agency's defense. The district court limited Progressive's recovery, if the jury should find for the plaintiff, to $3,000, the amount of two years' premiums on the policy. The court reasoned that since Progressive was willing to continue coverage under the Bieke policy so long as the premiums were paid its only loss was the premiums for the final two years of the policy term. The jury returned a verdict in favor of Progressive against Marketfinders. Greater Detroit Agency was dismissed.
 
 
 7
 We believe the district court erred in limiting Progressive's damages to $3,000. In American Insurance Co. v. Martinek, 203 Mich. 108 (1918), an insurance company sued its agent to recover damages it sustained as a result of the agent's failure to obey its instructions to cancel a fire insurance policy unless the insured was willing to accept a policy with reduced coverage. Despite repeated requests by the company the agent did nothing and the insured suffered a fire loss while the policy was still in force. The company paid the full amount of the proven loss and then sued the agent for the amount paid plus the costs of adjusting the loss.
 
 
 8
 At a trial without a jury the judge found in favor of the agent. On appeal the Michigan Supreme Court reversed, holding that the company had the right to believe that its instructions to its agent were being obeyed. Significantly, the Supreme Court also held that a judgment should have been entered in favor of the plaintiff for the full amount claimed. The company had been willing to continue coverage for a reduced amount, but the actions of the agent had continued its exposure for a greater amount. The Supreme Court did not limit recovery to the difference between the amount of insurance the company was willing to carry and the actual loss. It held the company had been damaged by the full amount of its payment to the insured and its costs of disposing of the claim. Martinek has not been overruled and still represents the law of Michigan on this question.
 
 
 9
 We recognize factual distinctions between Martinek and the present case, but believe it clearly establishes one principle: When an insurance agent's failure to follow the insurance company's instructions to cancel a policy causes the company to make payments and expenditures, the company is entitled to recover all of such payments and expenditures. Its recovery is not limited by the fact that it would have been willing to continue coverage if it had received premium payments. Since the jury found Marketfinders at fault, Marketfinders is in the same position as the defendant in Martinek.
 
 
 10
 The jury found Marketfinders liable to Progressive. The only issue for retrial is that of damages. The judgment of the district court is reversed, and the cause is remanded for a new trial on damages.